### IN THE

## *Supreme Court of Errors*

#### OF THE

## STATE OF CONNECTICUT,

### IN JUNE TERM, 1816.

———— :::::: ⊕ :::::: ————

### SLOCUM *against* WHEELER and others.

THIS was an action of trespass *vi et armis* against the defendants, for breaking and entering, on the 21st of *October* 1814, the plaintiff's dwelling-house at the island of *Nashawinna*, in *Dukes* county in the commonwealth of *Massachusetts*, and taking and carrying away several articles of personal property belonging to the plaintiff, particularly specified. The cause was tried at *Norwich, September* term, 1815, before *Swift*, Ch. J. and *Brainard* and *Hosmer*, Js.

On the trial, the taking of the goods was clearly proved, and that they were, when taken, at *Nashawinna*, in the plaintiff's possession.

To render the sentence of a district court of the United States, sitting as a court of admiralty, and deciding the question of prize, conclusive on the same point arising incidentally in the state courts, such district court must have had jurisdiction of the subject matter; and whether it had or not, the state courts are competent to examine and decide.

Where the president of the *United States*, under the authority of Congress, issued a commission to the commander and crew of a private armed vessel *to seize any armed or unarmed British vessel, public or private, within the jurisdictional limits of the United States, or elsewhere, on the high seas, or within the waters of the British dominions, and to seize all vessels and effects, to whomsoever belonging, which should be liable thereunto, according to the laws of nations; and the rights of the United States as a power at war, and to bring the same into some port of the United States in order that due proceedings might be had thereon :* it was held, that the goods of *British* subjects, seized by the officers and crew of such private armed vessel, *on land,* within the territorial limits of the *United States*, and in their peaceable possession, could not be lawful prize of war, nor subject to the jurisdiction of a prize court.

*Quære,* whether property taken in one district of the *United States* as prize of war, can be carried into another district for adjudication.

The defendants justified the taking on the following facts. The island *Nashawinna* is within the state and district of *Massachusetts,* and when the goods were taken, was within the actual jurisdiction of that state, and not in possession of the *British.* The plaintiff was an *American* citizen. The defendants were the commander and crew of the row-boat, called the *Yankee,* commissioned by the president of the *United States* on the 25th of *August* 1814, as a privateer.

The commission authorized the officers and crew " to subdue and seize any armed or unarmed *British* vessel, public or private, which should be found within the jurisdictional limits of the *United States,* or elsewhere, on the high seas ; or within the waters of the *British* dominions ; and such captured vessel, with her apparel, guns, &c. and the goods and effects which should be found on board the same, to bring within some port of the *United States,*" &c. It further authorized them " to retake any captured vessels or effects, and to obtain, seize and take all vessels and effects to whomsoever belonging, which should be liable thereunto according to the law of nations and the rights of the *United States* as a power at war, and to bring the same within some port of the *United States,* in order that due proceedings might be had thereon." There was an endorsement on the commission as follows : " District and Port of *New-London,* 24th of *September,* 1814. The within named boat *Yankee* being too small for her crew, they are permitted to use the boat lately named the *Experiment,* now called the *Yankee,* and to which this commission is to apply. *Jedediah Huntington,* Collector."

The property taken was brought into *Connecticut ;* and on the 13th of *January* 1815, a libel was filed by the defendants to procure the condemnation of it as prize, before the district court of the district of *Connecticut,* sitting as a court of admiralty. The libel propounded, 1st, the act of Congress passed on the 18th of *June* 1812, declaring war against *Great-Britain ;* 2dly, the commission granted to the row-boat *Yankee ;* 3dly, that on the island *Nashawinna* in the *Vineyard* sound, the row-boat *Yankee* seized as prize of war, the goods and chattels in question ; all which property belonged to the government of the United Kingdom of *Great-Britain* and *Ireland,* or the officers, soldiers and subjects of the same ; and were, by the proponents and others on board

the row-boat *Yankee*, carried into the port of *Mystick* in the district of *Connecticut*, for adjudication. A monition was duly issued and published; and on the 28th of *February* 1815, no person having appeared to claim the goods and chattels seized, they were condemned as good and lawful prize to the captors.

The court charged the jury, that the commission did not authorize the defendants to seize and capture the goods and chattels aforesaid, admitting them to be *British* property, on the island of *Nashawinna;* that if duly captured, the defendants were not authorized to bring them into the district of *Connecticut* for adjudication; and that, as it appeared on the face of the libel, that they were taken on the island of *Nashawinna*, and thence brought into the district of *Connecticut* for adjudication, they were not within the jurisdiction of said district court; that therefore, the decree of condemnation proved nothing for the defendants.

The jury found a verdict for the plaintiff; and the defendants moved for a new trial on the ground of a misdirection. The questions arising on this motion were reserved for the consideration and advice of the nine Judges.

The case was argued at the last term of this Court, by *Brainard* in support of the motion, and by *Cleaveland* contra; and was continued to advise. At this term, the Court declined hearing further argument.

In support of the motion, it was argued, that each of the three propositions contained in the charge was a misdirection; but if either was, a new trial ought to be granted.

If the first direction be correct, it must be either because the taking " as enemy's property" was *on land*, or *in another district*. Captures on land by a naval force are sanctioned by the usage of every country in every war, and recognized as legal in the sentences of every court of admiralty. *Lindo* v. *Rodney*, Doug. 613. n. 4 *Dall. Append.* vii. *Brown & al.* v. *Franklyn*, Carth. 474. The capture in this case was also justified by the *lex talionis*, which is part of the law of nations.

The terms of the commission were comprehensive and unambiguous. The construction given on the trial is too

*Hartford,*
June, 1816.

Slocum
*v.*
Wheeler.

Slocum
*v.*
Wheeler.

narrow. It is opposed to the very object in granting the commission.

But a capture of enemy's property is justified *without* commission, though in that case, the disposition made of it by the admiralty is different. *The Rebeckah,* 1 *Rob.* 197, 8. [236.] 1 *Wils.* 213.

The second part of the direction under consideration is equally incorrect ; for the captors may be compelled *from necessity,*—by stress of weather, or by the enemy,—to make a port in *any* district ; and that port must be the place of condemnation ; as it may be impossible to remove the property, and the evidence, to a distant district. It is for the benefit even of the claimants to have a trial where they are carried with the property ; and the admiralty of the district furnishes all persons with the most appropriate remedy. To deny this privilege in a case of *necessity,* where the capture is admitted to be lawful, is absurd.

Upon the point that the jurisdiction in the case stated belongs to the district court in *Massachusetts,* and not to that in *Connecticut,* the charge exposes itself to two objections : that the superior court had no right to decide that question at all ; and if they had, that they decided it wrong.

The district court is empowered by the constitution, and the judiciary law, to decide for itself the question of its own jurisdiction ; and to the discharge of this duty it must be presumed competent. The only security against the possible abuse of authority which can ever be given, is given in this case, by appeal to the circuit and supreme courts of the *United States.* If this be not the exclusive remedy, the supreme court of the *United States* may sustain the jurisdiction of a district court in the very case where the party in whose favour they thus decide, is suffering as a trespasser the judgment of a state court whose opinion upon the same question collaterally given happened to be different. *Doane's* admrs. v. *Penhallow & al.* 1 *Dall.* 220. 221. 4 *Dall. Append.* ix. x. *Wilkins* v. *Despard,* 5 *Term Rep.* 117. 4 *Cranch* 18. 294.

But the question which of the two district courts has jurisdiction, can in no case come before this court. In order to arrive at the question which of two admiralty courts has jurisdiction, they must necessarily decide a previous question : Is it of admiralty jurisdiction ? To decide that it is, is to

decide that it is not of common law jurisdiction; for they never have concurrent powers when the former is a *prize* court. The question, therefore, what prize court is to decide, will always be *coram non judice* in a court of common law; for they must say either that it is not a question of prize, or if it is, that they have no further jurisdiction; and so an answer to an ulteriour question would be extra-judicial. *Lothian* v. *Henderson,* 3 *Bos. & Pull.* 499. *Baring* v. *Clagett,* 3 *Bos. & Pull.* 201. 215. *Penhallow* v. *Doane's* admrs. 3 *Dall.* 85, 6. *Geyer* v. *Aguilar,* 7 *Term Rep.* 681. *Bernardi* v. *Motteux, Doug.* 574. *Ladbroke* v. *Crickett,* 2 *Term Rep.* 653. 4 *Cranch* 23. 294. 1 *Conn. Rep.* 7, 8.

But if they could decide, they have decided wrong. The charge denies the power of the district court of this district, because it appears upon the face of the decree, that the facts took place in the island of *Nashawinna.* The decree speaks of the island of *Nashawinna* in the *Vineyard* sound, without saying in what district it is, or whether it is in any district; and no inference or intendment can presume a defect in a record which does not exist. The fact, then, from which the court drew their conclusion, is otherwise.

The judgment of a court of competent jurisdiction, cannot be attacked collaterally. Nor is there one invariable rule by which the competency of different courts is to be tried. The rule as to a court of admiralty, is, whether it has jurisdiction of the *subject matter.* The question is, *prize or no prize;* that is, in this case, enemy's property or not. But the court admit it to be enemy's property; and every attack is a collateral one, which is not in the course of appeal.

The jurisdiction of a prize court is bounded by no local limits; it decides upon every species of property *jure belli et jure gentium,* and its suitors come from every nation. Every district court in the *United States* has, in time of war, all the powers of an *English* prize court. All courts of admiralty have a concurrent jurisdiction upon this question; and have, of course, a right to decide whether that question is before them. Arguments drawn from a possible abuse of power indicate a dangerous jealousy, and are as applicable to one court as to another. *Menetone* v. *Gibbons & al.* 3 *Term Rep.* 270. *Oddy* v. *Bovill,* 2 *East* 479. *The Christopher,* 2 *Rob.* 173. [209.] *The State of Georgia* v. *Brails-*

Slocum
v.
Wheeler.

ford & al. 3 Dall. 16. Rose v. Himely, 4 Cranch 250, 1, 2, 3.
258. 264. & seq.

A court of common law cannot claim to participate in the powers of a prize court; for it has not the means of using them. This case is stronger than any of the *English* cases relied upon by the plaintiff; for this is a domestic judgment; and this court has no superintending authority by which it can issue a prohibition. *Talbot* v. *Janson*, 3 *Dall.* 161. *Ladbroke* v. *Crickett*, 2 *Term Rep.* 649. 4 *Dall. Append.* viii. *Smart* v. *Wolf*, 3 *Term Rep.* 341 to 347. *The King* v. *Broom*, *Carth.* 398.

The validity of the commission, and the extent to which the decree will operate, are questions not before the court. They were suffered to go to the jury; and no exception was taken to their admission. They are now to be regarded as proper evidence; and whether the directions accompanying them were proper or not, is the only enquiry.

All the questions involved in this case are settled by the cases cited. They decide, that enemy's property may be taken on land or water, with or without commission; that it may be brought into the port of a belligerent, of his ally, or of a neutral; that the prize court may be holden in the country of the belligerent, or his ally; that it is a competent court, if it has jurisdiction of the question *prize or no prize;* that every *United States* district court has all prize jurisdiction, and every court of common law has none; and that the judgment of a court thus competent cannot be collaterally attacked. It is also to be considered, that in the case of a domestic judgment these positions apply more strongly than with regard to a foreign one; particularly, to a court that cannot issue a prohibition.

The argument *contra* was in substance as follows.

It is claimed the court erred in directing the jury, that the commission offered in evidence gave the defendants no authority to capture property on the territory of the *United States*, in the peaceable possession of the *United States*, and not in the possession of the *British*. This is denied,

First, Because the commission offered in evidence shews that it was of no validity. The indorsement on the commission shews that it was by the commander relinquished and given up as a commission to the boat for which it was first issued.

Secondly, It could not be indorsed over as a commission to another boat; because when given up, it was *functus officio,* and ceased to be a commission; because the collector had no authority to indorse it over by the law of the *United States;* because it did not answer to the description of the boat on which it had first been taken out; and because the laws of the *United States* had authorized the president of the *United States* only to issue commissions to private armed vessels, and that under particular requirements prescribed by the law, which were not complied with at all by such indorsement. See 2 *Grayd. Dig.* 145.

This was a commission from the collector, and not from the president, and was opposed to the practice in *England* under their prize act. See 5 *Rob.* 42. 252. 3 *Rob.* 224. 195. (*Lond.* edit.)

Thirdly, The law of the *United States* never meant to authorize the president of the *United States* to issue commissions *to boats without tonnage.* The requirements of the law are, that tonnage shall be made known by the owners; that a description of the vessel shall be sent to the secretary of state, and there lodged, stating the tonnage. The boat in question cannot be so described; her tonnage cannot be taken. See 2 *Grayd. Dig.* 145.

Fourthly, Admitting the commission to be valid, it gives no authority to capture property on the territory of the *United States,* in their peaceable possession.

Every government has a right to say what belligerent rights they will, and what they will not, exercise.

Belligerents, whether of the army or of private armed vessels, receive their authority from the commission issued by their government, and must confine themselves within the limits prescribed by such commission, except in cases of necessity. *Vattel, lib.* 3. *c.* 15. *s.* 223, 4, 6, 7.

In *England,* the rights and powers of private armed vessels have always been governed by the terms of the commission. 1 *Rob.* 196. 197. 3 *Rob.* 134, 5, 6, 7, 1 *Edwards' Adm. Rep.* 113. 114.

In 1798, our government declared a partial war against *France,* and authorized the president to issue special commissions. Private armed vessels could not exceed the authorities given in such commission. See *Laws of U. S.* vol. iv. p. 163.

In the present instance, the government have declared war, and authorized the president to issue commissions in such form as he may think best. By the terms of the commission they must be governed. But the terms of this commission give no authority to capture on land, much less upon the territory of the *United States* in their peaceable possession.

In *England,* the commission authorizes a capture from sea upon land ; yet in no case has it ever been construed to give authority to capture within the *British* territory in their peaceable possession. See *Doug.* 591. 4 *Dall. Append.* vii. *Carth.* 474.

But at any rate, this property, if *British* property, on the territory of the *United States* in their peaceable possession, was only liable to be confiscated to the government, and never was a subject of capture, or capable of being claimed as prize. If it had been on water, it could have been no more than a *droit* in admiralty ; and then not subject to capture, or capable of being claimed as prize. See 1 *Rob.* 236. 237. 283. 3 *Rob.* 164, 5, 6, 7. 4 *Rob.* 403.

It would be opposed to the very idea of capture, that property in our own possession should be liable to be seized by a privateer. His commission is to go out and take property, and bring it in ; but not to seize property already in our possession, to take which no force is or can be necessary.

Another ground on which it is said the court have erred, is, that the defendants have taken the property *as prize of war,* and therefore the court cannot enquire whether it was rightfully or wrongfully taken.

It is admitted, that if the property was taken, and could have been taken, as prize of war, this court could not adjudge upon it. But a court of common law must always have the power to enquire whether it was thus taken or not, and whether it was a subject capable of being claimed as prize. *Doug.* 591. *et seq.*

The court below have enquired, and have found that it was *not* taken as prize of war ; and if not, they must have jurisdiction to the full extent of their powers.

But it is said again, the court could not make this enquiry, because the defendants have produced a decree of the district court of the state of *Connecticut* condemning the prop-

erty as prize ; and this decree is conclusive, and cannot be enquired into.

But a decree of admiralty on default, without claim, may always be enquired into between third persons. This is proved by the case decided before the supreme court of the *United States* in case of *The Ship Mary and cargo, in January,* 1815. If this decree is not couclusive, the court have put the question at rest ; for they have not only found that the court had not jurisdiction, but also that the property was not taken as prize.

Further, admitting the district court had jurisdiction, it cannot be admitted to prove any thing more than what is expressly found by the court. But no fact is found by the court in this decree.

Again, no court of admiralty had jurisdiction of the case, as appears from the record itself. To entitle a court of admiralty to jurisdiction, it must appear to be a subject within the jurisdiction of the court ; that is, the subject must be capable of being claimed in admiralty. No property on the territory of the *United States,* in their peaceable possession, can possibly be brought before a court of admiralty, admitting it to be liable to confiscation. If seized in behalf of the king in *England,* it is brought into the court of *Exchequer.*

It is thought to have been shewn it could not be taken as prize. If it cannot be taken or claimed as prize, and this appears from the facts stated in the libel as to the location and description of the property, it cannot be claimed that it was a subject of admiralty jurisdiction.

Further, by the laws of the *United States,* the property, as disclosed in the libel, was not even liable to confiscation. If not liable to confiscation, it could not be a subject capable of being claimed as prize. This was decided by the case in favour of the *United States* against a quantity of timber at *Boston,* libelled as the property of the government of *Great-Britain,* in *January* 1814, by the supreme court of the *United States.*

But admitting the subject was of admiralty jurisdiction, yet the district court of *Connecticut* district had not jurisdiction, on the ground that it appeared from the record the property was not seized on the high seas, but on land, not within this district. The laws of the *United States* have

given the district court jurisdiction of admiralty and maritime causes only where the seizure was on the high seas, or on waters navigable from the sea, by vessels of ten or more tons burthen, within their respective districts. 1 *Grayd. Dig*. 146. *sect*. 54. The law respecting private armed vessels provided, that the district courts should have jurisdiction of prize cases " *as in other cases*" of admiralty and maritime jurisdiction. 2 *Grayd. Dig*. 144. From the expression made use of, it is a fair construction, that the district courts have jurisdiction only under the same conditions they have jurisdiction in other cases of admiralty and maritime jurisdiction. A seizure under the laws of impost, navigation, &c. if made on water, as provided by law, is a case of admiralty and maritime jurisdiction. There is the same reason that a seizure by a captor should be tried within the district where seized, as if seized under the impost law. That the place of seizure determines what court has the jurisdiction, see *Keene* v. *The United States*, 5 *Cranch* 304. and many other cases decided by the circuit court.

But it is said again, you cannot enquire into the question of jurisdiction of the court, but are concluded by the decree.

This proposition is denied to be law. In the first place, you may always enquire into the jurisdiction of the court, if from the face of the record it appears the court had not jurisdiction. *Grumon* v. *Raymond*, 1 *Conn. Rep*. 45. *Perkin* v. *Proctor*, 2 *Wils*. 482. *Stanyon* v. *Davis*, 6 *Mod*. 224. Lord *Coningsby's* case, 9 *Mod*. 95. *Rex* v. *Corden*, 4 *Burr*. 2279.

Further, the district court is a court of *limited jurisdiction;* and on that ground it must not only have jurisdiction, but it must be shewn *by the record* that it had jurisdiction. That the judgment is void, if the court has not jurisdiction, see *Rose* v. *Himely*, 4 *Cranch* 241. 243. 271. 1 *Conn. Rep*. 45.

Finally, this was a judgment by default, without a claim, and may be enquired into. If so, the question of jurisdiction is decided by this court, and cannot on this motion be reviewed.

Swift, Ch. J. The question is, as to the effect of the decree of the district court condemning the property in question.

In all cases of courts of limited jurisdiction, their proceedings must be in matters within their jurisdiction, or they

are void ; and when such proceedings are questioned before another tribunal of general jurisdiction, it is competent for them to examine whether the subject matter was within the jurisdiction of such court. This rule is equally applicable to courts of admiralty ; and such, I apprehend, has been the course of decisions. This point was settled in the case of *Rose* v. *Himely,* 4 *Cranch* 241. where it was decided that the condemnation of a vessel and cargo by a court of admiralty in *St. Domingo* did not change the property, because such court had no jurisdiction. It is true, this case was over-ruled in the case of *Hudson* & *Smith* v. *Guestier,* 6 *Cranch* 281. ; but that was on the ground that the court at *St. Domingo* had jurisdiction ; and in both cases it was considered that the question of jurisdiction was examinable.

This principle is essential to the due administration of justice. Suppose a self-created tribunal should exercise maritime power, and pass decrees affecting individual rights ; if its jurisdiction could not be questioned, the greatest injustice would be done. No one will pretend that the proceedings of such a court would be valid ; and yet it might as well be said in this case as in any other, that the validity of the acts of a court of admiralty was impeached ; and that if it might be done in one case, it might in all. Suppose one should obtain a tortious possession of another's horse in some interior place, and exhibit a libel in the district court and obtain a sentence of condemnation, no one can think that this would change the property ; yet such would be the effect of the condemnation, if the jurisdiction of the court could not be called in question.

There can be no doubt, then, but the validity of the sentences of prize courts may be examined ; and Lord *Mansfield* has laid down the correct rule in *Lindo* v. *Rodney, Doug.* 619. n. " *The question prize or no prize is the boundary line.*" This must be understood to mean *lawful* prize or *not lawful* prize. If the circumstances of the case are such as to admit of the possibility that the capture was lawful and the prize good, then the prize court alone has jurisdiction, and the decree is conclusive on all other tribunals ; no enquiry can be made whether it be correct. But if the capture can by no possibility be lawful, then the prize court cannot have final jurisdiction : it will be a mere question of tort cognizable by the courts of common law ; for it would be

inconsistent to say it was a question of prize, when it would be impossible there should be a lawful capture. If the court be a self-created tribunal, or the capture in a place where there can be no prize of war, the question of prize or no prize cannot arise, the tribunal can have no jurisdiction, and it would be the greatest absurdity to say that their decrees should change the title to property. The question, then, arising in this case, is, whether from the facts appearing of record there could have been a lawful capture of the property in dispute.

It appears, that Congress declared war against *Great-Britain,* and authorized the president of the *United States* to issue to private armed vessels, commissions, or letters of marque and general reprisal, against the vessels, goods and effects of the government of *Great-Britain,* and the subjects thereof; that the president issued a commission to the private armed vessel in question, to subdue, seize and take any armed or unarmed *British* vessels, public or private, within the jurisdictional limits of the *United States,* or elsewhere, on the high seas, or within the waters of the *British* dominions; and the same, with all effects and persons on board, to bring into some port of the *United States;* also to retake any captured vessels or effects, and to take, seize and detain all vessels and effects to whomsoever belonging, and to bring them into some port of the *United States,* in order that due proceedings might be had thereon. Here no power is given to a private armed vessel, or any person whatever, to capture or seize the goods or effects of *British* subjects or others *on land,* within the territorial limits of the *United States.* The authority is limited to the *high seas;* and such was the manifest intent and object of the government. It is true, by the right of war, they might have seized the effects of *British* subjects within our territorial limits; but until they have given such authority, no individual can do it; and such is understood to have been the decision of the Supreme Court. It will be admitted, that there may be cases where there may be a seizure on land within our territory; as where an enemy's vessel flying from pursuit should convey goods on to the land, the privateer pursuing might seize such goods; for this would be in effect a naval capture. Such, however, is not the present case.

It further appears from the record, that the property in

question was taken on the island of *Nashawinna* in the district of *Massachusetts*, within the territorial limits of the United States, and not on the high seas, or within the *British* dominions. The act of Congress and the commission of the president gave the defendants no authority to capture *British* effects in such place. They could not be lawful prize of war. The district court had no jurisdiction; and the sentence of condemnation is no protection to the defendants.

I would not advise a new trial.

In this opinion TRUMBULL, SMITH, BRAINARD, BALDWIN and GODDARD, Js. concurred.

HOSMER, J. If the property taken were *American*, it is not pretended that it was liable to capture. It was seized upon the supposition, that it belonged to the *British* government, or a *British* subject, and under the same view, it has been condemned as prize. To test the legality of the seizure and the decree of the admiralty, I will admit, for the purpose of this decision, that the above supposition was correct. Two enquiries are naturally presented; was the seizure of the property (if it were *British*) authorized by law; and had the district court of *Connecticut, as a court of admiralty*, jurisdiction over it as prize of war?

1. The legality of the seizure must be decided by the laws of the *United States*.

The defendants have argued, that by the common law, every individual has right to capture the property of the public enemy, wherever he may find it. I ask by *what common law?* The reply is, the common law of *England*. If this answer were correct, unless the same rule has been adopted as the *common law of the United States, or of the state in which the seizure was made*, it is entirely unavailable. Of this there is not the slightest evidence, nor is there any such common law in *England*. An *obiter dictum* of a single judge to this effect (1 *Wilson* 213.) is all that has been exhibited, to substantiate the doctrine in the face of multiplied authority.

Public war is that state in which a nation prosecutes its rights by force, and is carried on in the name of the government, and by its order. (*Vattel, lib.* 3. *c.* 1. *s.* 1.) It belongs to the government to say, what belligerent rights they will,

*Hartford,*
June, 1816.

Slocum
*v.*
Wheeler.

and what they will not, exercise. Individuals may not commit hostilities without the sovereign's order; (*Vattel, lib.* 3. *c.* 15. *s.* 223.) nor may they fit out private ships of war to cruize against the enemy, unless commissioned for this purpose. (*Id. s.* 229.) Depredation committed on or near the sea, without authority from any prince or state, is piracy, wholly unauthorized, and highly criminal by the law of nations; and without any pretence for divesting the dominion of the former proprietor. 2 *Wooddes.* 421. 5 *Bac. Abr.* 310. 1 *Rob. Adm. Rep.* 196. [236.]

The *commission* of the row-boat *Yankee* was next adverted to, to justify the seizure. No little surprise is excited, in the attempt to give such a construction to this instrument. That the dwelling of an *American* citizen in the heart of our country, may, with force and strong hand, under power delegated by our own government, be entered by a privateer's crew, and rifled of the furniture and other valuable property, under the pretext that they are *British* goods, no person will be disposed to believe.

To establish a proposition so extraordinary, resort was had to the *English* adjudications on this subject.

In *Great-Britain* the rights of captors over the property of a public enemy, depend entirely on the commission granted them. Of what importance would it be to the defendants could they show, that the *English* letters of marque and reprisal authorized captures *on land.* The rights of the defendants did not result from *a British commission,* but from an *American commission.* As, however, it is not to be presumed that the *United States* are more regardless of the rights of their own citizens or of others, than the *British* government are, it may aid in the construction of the powers granted by the president to prove, that an *English* privateer has no such right as is pretended. This shall be done in a few words.

An expression in the case of *Lindo* v. *Rodney, Doug.* 617. *n.* [1]. through inadvertency has occasioned a mistake. It is said, " that the commissions to fit out ships against the enemy expressly authorize the persons to whom they are granted to take the enemy's goods *by land* as well as by sea." This was an assertion made by Doct. *Wynne,* and in proof he cited an instance occurring in the 37th of *Elizabeth.* What has been the tenor of commissions from that remote

period to the present time does not appear, nor is it of any importance to enquire. It never was imagined, that either the *public* or *private* ships of war had authority to seize the goods of the public enemy *on British soil*. The land mentioned in the commission spoken of, was the territory of the public enemy. The law of *Great-Britain* on this subject appears from an opinion expressed by Sir *William Scott*, in a case before him in the year 1809. (1 *Edwards' Adm. Rep.* 102. 113.) A privateer had taken *public property* on the *Danish* island of *Stromoe*, and the rights acquired by it were in question. " I take it," says Sir *William*, " that the operations of privateers are confined to the attack of fortified places on land. The words of the 3d section of the prize act extend only to the capture of any of his majesty's ships, of *any fortress* upon the land, or any *ammunition, stores of war, goods, merchandize*, and treasures *belonging to the state*, or to *any public trading company* of the enemies of the crown of *Great-Britain* upon the land." " Here then the interests of the king's cruisers are expressly limited with respect to the property in which the captors can acquire any interest of their own, the state still reserving to itself all private property, in order that no temptations might be held out for unauthorized expeditions against the subjects of the enemy on land. With regard to private ships of war, the lords of the admiralty are empowered by the 9th section to issue letters of marque to the commanders of any such ship or vessel,—for what purpose? Why, for the attacking and taking any place or fortress upon the land, or any ship, or vessel, arms, ammunition, stores of war, goods, or merchandize belonging to or possessed by any of his majesty's enemies. Where? In *any sea, creek, river, or haven.* I perfectly recollect, that it was the intention of those who brought this bill into parliament, that privateers should not be allowed to make depredations upon the coast of the enemy, for the purpose of plundering individuals, for which reason they were restrained *to fortified places, and fortresses, and to property waterborne.*"

On recurrence to the law of the *United States*, it will be seen, that the authority of *American* privateers is in no respect greater, and in one particular is less, than that conferred by the *British* prize act on *British* privateers. The president of the *United States* is authorized (11th vol. *L. U. S.*

p. 227.) " to issue to private armed vessels of the *United States* commissions, or letters of marque and general reprisal, in such *form as he shall think proper*, against the vessels, goods and effects of the government of the United Kingdom of *Great-Britain* and *Ireland.* The power thus delegated he has thought fit to exercise by granting to the row-boat *Yankee* a commission limiting the field of enterprize *to the waters only.* The words of it authorize the privateer, " to seize, subdue, and take any armed or unarmed *British* vessel, which shall be found within the jurisdictional limits of the *United States,* or elsewhere on the *high seas,* and such captured vessel, &c. to bring within *some port of the United States.*" *This, so far as relates to the public enemy, is the whole power granted.* There is nothing contained in the commission on which to found a pretence that the crew of the *Yankee* was empowered to capture property of any description, on the *territory of the public enemy ;* much less, that they might seize *British effects on our own soil.*

The standing instructions given by the president of the *United States* to the private armed vessels, define the duty of the commanders, and are a commentary on the commissions issued. They commence with this expression : " The tenor of your commission under the act of congress, entitled, " An act concerning letters of marque, prizes and prize-goods," a copy of which is hereto annexed, *will be kept constantly in your view.*" They then proceed to specify the scene of action. " The *high seas* referred to in your commission, you will understand, generally, to extend to *low-water mark,* but with " the exception of the space within one league, or three miles, from the shores of countries at peace both with *Great-Britain* and the *United States.* You may, nevertheless, execute your commission within that distance of the shore of a nation at war with *Great-Britain,* and even *on the waters* within the jurisdiction of such nation, if permitted so to do." This is all that relates to the place of executing the commission, and is a perpetual construction of it ; so accurately defining the limits of enterprize, that they cannot be mistaken.

The prize act accompanying the commission, if further explanation were needful, most abundantly furnishes it, by giving such direction in relation to the bringing *into port,* and dealing with vessels and effects taken, as to leave no doubt,

that capture was limited exclusively " to property water-borne."

The supreme court of the *United States (January* 1814) on a prosecution by the *United States* against a quantity of timber seized at *Boston* as being *British* property, decided, that it was not liable even to confiscation.

The result on this head is, that the property at *Nashawinna* was *not* liable to capture; that it was not, and *could not* be, taken *as prize;* and that the taking of it was a clearly unauthorized, unqualified trespass,—an open and violent robbery, punishable in the courts of common law. Of consequence, the charge to the jury, that the commission to the *Yankee* did not authorize the defendant to seize and capture the goods and chattels on the island *Nashawinna*, was strictly legal.

2. The next enquiry is, had the district court of *Connecticut, as a court of admiralty, jurisdiction* over the property taken on *Nashawinna* as prize of war?

I am of opinion, that it had *no jurisdiction,* and that the sentence pronounced by it is *utterly void.* First, as a *court of admiralty,* the district court had no cognizance of the matter brought before it.

It must constantly be borne in mind, that the property condemned, without the shadow of authority, was taken *on land* within the territory of the *United States.* It was not, and *could not* be, seized *as prize;* but the seizure was an act of plunder and rapine. It must likewise be recollected, that the libel no where avers the taking of the goods to have been *on water,* but that it explicitly alleges it to have been " upon an island, called *Nashawinna,* in the *Vineyard* sound. This island, the motion states, is within the actual jurisdiction of the state of *Massachusetts.* Independent of this, the court will judicially take notice of a fact of such publicity as that an island adjoining a well known sound or sea, is part of the *United States.* (*Peake's Ev.* 81, 3.)

The courts of the *United States* are universally of *limited jurisdiction,* and their proceedings are erroneous, if the jurisdiction be not shown upon them. (5 *Cranch* 185.) This observation is applicable to the district court as a *court of admiralty,* equally as to the common law tribunals. " It is the *place of seizure* which decides the jurisdiction," say the supreme court in *The United States* v. *The Betsey* and *Charlotte,* 4 *Cranch* 452.

*Hartford,*
*June, 1816.*

Slocum
*v.*
Wheeler.

The seizure, to give admiralty jurisdiction, must be *on navigable water.* If it is on land, the district court may have cognizance as a court of *common law,* on a prosecution by the *United States,* but in no other capacity. These principles will be apparent, on recurrence to the law defining the jurisdiction of the courts of the *United States ;* and besides, have the advantage of being established by a direct decision of the supreme court. The ninth section of the judiciary act, (vol. i. *L. U. S.* p. 53.) having conferred criminal jurisdiction on the district courts in certain cases, provides, that they " shall also have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation, or trade of the *United States, when the seizures are made on waters which are navigable from the sea by vessels of ten or more tons burthen,* within their respective districts." It further enacts, that the district courts shall have cognizance of " seizures *on land or other waters than as aforesaid ;*" but the latter clause refers merely to seizures at common law, and so are the adjudications.

" It is clear" (say the court in 4 *Cranch,* 452.) " that Congress meant to discriminate between seizures *on waters navigable* from the sea, and seizures upon land or upon waters not navigable, and to class the *former* among the civil causes of admiralty and maritime jurisdiction." The same principle has been recognized in many determinations made by the supreme court of the *United States,* so that it is past all question, that *admiralty causes* of which the district court has cognizance, must originate from *seizures made on navigable waters only.* 3 *Dall.* 301. 2 *Cranch* 406. 4 *Cranch* 452. and *United States* v. *Watkinson* and *Hubbard,* before *Livingston,* J.

I am not aware that there is any act of Congress on this subject, except the one referred to, and one passed on the 26th of *June* 1812, a few days posterior to the declaration of war. It is entitled, " An act concerning letters of marque, prizes and prize goods." (11th vol. *L. U. S.* p. 238.) In the 6th section of the law it is enacted, that " in the case of all captured vessels, goods and effects which shall be *brought within the jurisdiction* of the *United States,* the district court of the *United States shall have exclusive original cognizance thereof,* as in cases of *admiralty and maritime jurisdiction.*" This

*Hartford,*
June, 1816.
Slocum
*v.*
Wheeler.

clause clearly relates to captures on the high seas. The jurisdiction of the district court is in no other respect enlarged by it, than by extending the ordinary jurisdiction before conferred on it as a court of admiralty, to questions *of prize ;* at the same time the symmetry of the judicial system is preserved. The *admiralty jurisdiction comprizes the navigable waters only.*

If the enquiry be made, why was not jurisdiction given to the district court as a court of prize, of captures *made on the land ?* I reply, it was because no captures could *there* be made. Whenever it shall be considered expedient to enlarge the sphere of capture, there will be a correspondent extension of the court's jurisdiction. It is admitted, that the district courts of the *U. S.* have exclusive cognizance of all cases of admiralty and maritime jurisdiction, 3 *Dall.* 6. 4 *Cranch* 2. But *British* property may not be taken *as prize* on the land ; and therefore the courts above named have not *admiralty jurisdiction* of such seizures.

Thus far I have endeavoured to show that the district court, the seizure having been made on land, could not have any admiralty jurisdiction of the property taken. But if the objection to the exercise of admiralty jurisdiction, in any *possible* case of seizure on land, is considered as unfounded, I am of opinion, that the taking of the property by the crew of a privateer is decisive to negative the court's jurisdiction. This fact appears on the libel. The defendants aver the seizure of property *on land,* upon the island *Nashawinna,* by virtue of their commission exhibited to the court. They declare upon it as being *captured,* and pray the condemnation of the property *as prize.*

I have shown, I trust, that the taking of the property was not a *capture,* that it was not *prize,* but unauthorized *plunder.* The jurisdiction of the district court, as a court of admiralty, *turns upon this point.* The property has been condemned, " *as prize of war.*" The question is, had the defendants, under the commission granted to the row-boat *Yankee,* authority to go with force and strong hand upon the island *Nashawinna,* to enter the plaintiff's dwelling-house, and to rifle it of his furniture, under the pretext of its being *British* property ? If they had, then the property seized was *prize.* But, if they had not, it was a wanton depredation

Slocum
*v.*
Wheeler.

and robbery, meriting severe punishment. I am of opinion that the act was of the latter description. I should regret extremely, if in the allowed exercise of belligerent rights, this country had transcended the limits, which the *British* have assigned to themselves. They do not allow their privateers, except against a fortress, to go upon the land of their enemy, " that no temptation may be held out for unauthorized expeditions." But, the pretext set up in this case, that *our own territory* is open to the invasion and depredations of privateersmen, is so perfectly novel as to defy all precedent. Had not the subject passed before the district court without opposition and *sub silentio,* I make no doubt, that the judge, instead of having condemned the property, would have dismissed the libel as without his jurisdiction.

There yet remains another objection, to the exercise of jurisdiction on the libel by the district court. The property was taken in the district of *Massachusetts,* on the island *Nashawinna.* I have not found any law of the *United States,* which authorizes the *seizure* of property in one district, and carrying it into another for adjudication. When property is taken on the high seas and brought into port, even the captor may not range from place to place, to seek an expedient jurisdiction to condemn. " The owner or owners of any private armed vessel, or his or their agent, may, at any time before libel shall be filed against any captured vessel or her cargo, remove her from any port into which such prize vessel or property may first be brought, to any other port of the *United States to be designated at the time of removal.*" 11th vol. *L. U. S.* p. 252. The designation of a certain port, is a *condition precedent* to the first and only removal the law admits, of a ship captured on the high seas and brought into port. But if property is *seized* within any district, it may not be removed ; the trial must be in the district where the seizure is made. *Keene* v. *The United States,* 5 *Cranch* 304. This is the construction given by the supreme court of the *United States* of any *seizure* made on land, by virtue of the 9th section of the judiciary act ; and I know not of any other law relating to this subject.

Under this head of argument the result is, that the district court sitting *in admiralty* had no jurisdiction of the property libelled, because the seizure of the property was *on land,* and was not, and could not be, *taken as prize* : and because

the jurisdiction, if any where, was in the courts of the state and district of *Massachusetts.*

What, then, is the legal effect of a decree pronounced by a tribunal that had no jurisdiction? The court on this point charged the jury, that it *proved nothing* for the *defendants,* for this obvious reason undoubtedly, that it was void and of no *legal effect.* Whether this part of the charge was correct, is the remaining question.

The objection to the charge may be resolved into this proposition, that the judgment of a court having no jurisdiction, is voidable by process *ex directo* to a superior tribunal, but is not void. In opposition to this I aver, that the sentence of a court, that has not jurisdiction of the *person, the process,* and *the subject matter,* is an entire nullity, and may collaterally be disallowed.

On this subject I lay down the following propositions. 1. That the judgment or decree of a court without or beyond its jurisdiction is void.

2. That the necessary facts to evince the want of jurisdiction may be enquired into, unless the court, whose judgment is under discussion, has precluded the examination, by having *found the facts.*

3. That in all limited jurisdictions, (and of this description are the district courts of the *United States,*) the facts requisite to give jurisdiction must appear of record ; and so far as regards the party to the suit, he must plead that the cause of action was within the court's jurisdiction.

4. *A fortiori,* That if the want of jurisdiction appears from *the facts found,* the judgment or decree is an entire nullity. This formal mode of proving well established principles is resorted to, that the determination may be satisfactory to the party in interest, who, it is presumed, places some confidence in the objections which have been urged.

1. Then, the judgment or decree of a court without or beyond its jurisdiction is void.

It has been an invariable distinction, that if a court has jurisdiction, but decides erroneously, its judgment is voidable only, and stands good until reversed. If, however, there is no jurisdiction, the judgment rendered is of no effect, and by all tribunals must be deemed a nullity. In the latter case, there is no *court,* no *judge ;* and hence any sentence pronounced is destitute of all authority.

A leading determination on this subject, is the *Marshalsea* case, 10 *Co.* 76. *b.* This was an action of trespass for false imprisonment. The defendants justified under a judgment rendered by the court of *Marshalsea*, a court of limited jurisdiction. The objection was, that it did not appear, as by law it should, that one of *the parties was of the king's household.* By the court it was " resolved, that the action well lies against the defendants; and a difference was taken *when a court has jurisdiction* of a cause, and proceeds *erroneously;* there the party who sues, or the officer, or minister of the court who executes the precept or process of the court, no action lies against them. But, when the court has *no jurisdiction of the cause,* there the whole proceeding *is coram non judice,* and actions will lie against them without any regard of the precept or process, and therefore the said rule cited by the other side, sc. *Qui jussu judicis aliquod fecerit* (but when he has no jurisdiction *non est judex*) *non videtur dolo malo fecisse, quia parere necesse est,* was well allowed; but it is not of necessity to obey him *who is not judge of the cause,* no more than it is a mere stranger; for the rule is, *judicium a non suo judice datum nullius est momenti.*"

To the same effect is the case of *Perkins* v. *Proctor,* 2 *Wils.* 384. " Where courts of justice *assume a jurisdiction which they have not,* an action of trespass lies against the officer who executes the process, because the whole *proceeding was coram non judice;* where there is no jurisdiction at all, there is no *judge;* the proceeding is as nothing."

The case of *Smith* v. *Bouchier,* 2 *Stra.* 993. is much in point. The vice-chancellor of the University of *Oxford,* who granted a warrant, the officers who acted under it, and the party who procured it, were all subjected in trespass, because it issued on oath that the plaintiff *suspected Smith* would not appear, but would run away, whereas the oath ought to have been that he *believed* these things.

To cite cases in proof of the proposition advanced were endless. I shall content myself with mentioning the case of *Grumon* v. *Raymond & al.* in this Court (1 *Conn. Rep.* 40.) wherein it was decided, that a search-warrant which issued without some of the preliminary requisites, was *coram non judice* and void, and no justification to the magistrate who signed, or the officer who executed it. In delivering their opinion, the Court said, " Where there is want of jurisdiction

over the person, as in the *Marshalsea* case ; or over the cause, as if a justice should try a man for murder ; or over the process, as in the case cited from *Hobart* ; it is the same *as though there was no court.* It is *coram non judice.*"

2. The next proposition advanced results of course, that the necessary facts to evince the want of jurisdiction may be enquired into, unless the examination is precluded by the facts *having been found.*

There can be no doubt, that every court of limited authority, has right to ascertain the facts requisite for the exercise of jurisdiction. But, if they are not ascertained, it is equally clear, that they may be enquired into for the purpose of showing, that the court had no cognizance of the matter decided. If want of jurisdiction renders a decree of no effect, the facts requisite to evince it may be proved. The contrary supposition would be absurd. In the case of *Wheelright* v. *Depeyster,* 1 *Johns. Rep.* 471. trover was brought for a quantity of coffee. The defendant justified under a purchase and condemnation by a court of admiralty. The property was carried into *St. Jago de Cuba,* and condemned at *St. Domingo.* "The plaintiffs" (says *Kent,* J.) "prove a property in the coffee, and the defendants justify under capture, condemnation, and sale abroad ; but before the defence can be received, it must appear that the condemnation was by a court having *competent jurisdiction* in the case, and *so far we have, of necessity, an incidental jurisdiction.* It would be a *monstrous doctrine to hold, that we were concluded by every assumed authority.* We are not to examine into the validity of the capture, but we must look so far as to see, whether the condemnation was by a *tribunal competent to pronounce it* in the given case ; and if that is once ascertained, I agree, that we must admit the defence to be conclusive. In the case of *Oddy* v. *Boville,* 2 *East* 437. a similar question arose as to the legality of a *French* prize court sitting in *Spain,* and no objection was raised as to the competency of the court of *King's Bench* to sustain the enquiry, and in the case of *Havelock* v. *Rockwood,* the same court did not hesitate to declare, that the *French* court of admiralty at *Bergen* was illegal." This case alone, if admitted as an authority, most fully establishes the principle advanced. The cases of *Rose* v. *Himely,* 4 *Cranch* 241. and *Cheviot* v. *Foussat,* 3 *Binney* 250.

hereafter cited for a different purpose, establish the same principle.

3. In all limited jurisdictions, the facts requisite to give cognizance must appear of record, and the party claiming the judgment to be valid, must plead *that the court had jurisdiction.* This was the third proposition advanced.

No fact can be the subject of enquiry, unless it is directly averred, or arises by necessary inference from the record. (1 *Day's Ca.* 187.) It follows as a consequence, that there never can be a presumption, that a limited jurisdiction was rightfully exercised, unless the facts requisite to give jurisdiction so far appear, that the court may legally have made enquiry concerning them.

To cite the numerous decisions on this point, must be unnecessary. In Lord *Coningsby's* case, 9 *Mod.* 95. a bill was exhibited in the duchy court for lands. The defendants demurred because the plaintiff did not *aver the lands were within the duchy.* The demurrer was held sufficient by *all* the judges, because " the duchy was a circumscribed jurisdiction." Even as to the superior courts of *Westminster-Hall,* it was said " That in courts of general jurisdiction, though universal as to the right, yet being circumscribed or *limited* as to *persons, such averment must be made.*"

I refer to many determinations to the same effect, without particularly stating them. *The Flad Oyen,* 1 *Rob.* 114. *Stanyon* v. *Davis,* 6 *Mod.* 223, 4. —— v. *Lee,* 1 *Ld. Raym.* 211. *Peacock* v. *Bell & Kendall,* 1 *Saund.* 74. *Trevor* v. *Wall,* 1 *Term. Rep.* 151. *Waldock* v. *Cooper,* 2 *Wils.* 16. *Havelock* v. *Rockwood,* 8 *Term Rep.* 268. *Donaldson* v. *Thompson,* 1 *Campb.* 429. *Terremoulin* v. *Sandys,* 12 *Mod.* 148.

The averment on the record of the facts requisite to give jurisdiction, will constitute a justification to all persons acting under the sentence or judgment, except the plaintiff. It is not only necessary for him to show, that the record has sufficient allegations to confer jurisdiction, but he must stand or fall by the fact, that the court had competent jurisdiction of the case.

Many are the decisions on pleas to justifying acts performed by virtue of the judgments of courts. I will select a few of them. The first class shall consist of *the judgments of inferior courts.*

*Hartford,*
June, 1816.

Slocum
*v.*
Wheeler.

In *Johns* v. *Smith, Cro. Jac.* 314. an arrest under process from the *Marshalsea* was considered false imprisonment, because it did not show *that the parties were of the king's household.*

A justification failed in *Higginson* v. *Martin, Bull. N. P.* 83. because the court, whose judgment was pleaded, had not jurisdiction. " The plaintiff" (say the court) " ought to know the extent of the jurisdiction to which he applies for justice ; and it is not enough that *the cause of action was laid within the jurisdiction of the court.*"

In *Dye* v. *Olive, March* 117. it was declared, that " when the defendant justifies under process of a court of *limited jurisdiction,* the plea should shew, that *the cause was properly subject to such jurisdiction.*" These determinations are peculiarly applicable to the district courts of the *United States.* " Courts which originate in common law possess a jurisdiction, which must be regulated by common law ; but courts which are created by *written law, and whose jurisdiction is defined by written law, cannot transcend their jurisdiction.*" 4 *Cranch,* 93.

The court in *Moravia* v. *Sloper, Willes* 30. decided, that " where the party (the plaintiff below) pleads a justification under process of an inferior court, he must shew, that the cause of action was within the jurisdiction of that court." See also *Morse* v. *James, Willes* 128. *Adney* v. *Vernon,* 3 *Lev.* 243. In 3 *Cranch* 331. is reported a determination of the supreme court of the *United States,* in which an action of false imprisonment was sustained by a justice of the peace who had been arrested under a warrant issued by a court martial for the non-payment of a fine. " A decision of such a tribunal" (say the court) " in a case *clearly without its jurisdiction,* cannot protect the officer who executes it."

The only cases to be found, so far as I know, which maintain a contrary doctrine, are *Gwynne* v. *Poole,* 2 *Lutw.* 935. and *Truscott* v. *Carpenter* and *Mann,* 1 *Ld. Raym.* 229. The former was directly overruled by the court in *Moravia* v. *Sloper, Willes* 35. and on the most convincing reasons ; and the latter seems to have been passed by without notice in every discussion on the same subject since its publication. It was determined on the strength of *Gwynne* v. *Poole,* and the *Marshalsea* case was directly questioned by it as being " a hard resolution." But, the *Marshalsea* case is considered as

*Hartford,*
*June, 1816.*

Slocum
*v.*
Wheeler.

good law, and is referred to as a leading authority, while the case questioning it is scarcely heard of. *Moravia* v. *Sloper, Willes* 30. *Perkin* v. *Proctor,* 2 *Wils.* 382. *Johns* v. *Smith, Cro. Jac.* 314. *Yates* v. *Lansing,* 5 *Johns.* 290. *Herbert* v. *Cook, E.* 22. *G. 3. Willes* 37. n. *Grumon* v. *Raymond,* 1 *Conn. Rep.* 40. and many more decisions expressly confirm it.

The law respecting a plea of justification by a foreign judgment requires that the extent of the court's jurisdiction be made to appear.

In *Collet & al.* v. Lord *Keith,* 2 *East* 260. it was said by the court, that " in justifying under process of a foreign court it seems, that the plea should be formed in analogy to similar justifications under the process of inferior courts." The *infra jurisdictionem* was averred; but the plea, as being too general, was adjudged to be insufficient.

The last class of decisions under this head, which I propose to cite, are *decrees* in *admiralty.*

The case of *Wheelwright* v. *Depeyster,* 1 *Johns. Rep.* 471. has been cited already for a different purpose; but it is explicit to shew, that to render a decree of admiralty of any validity, the competency of the *court's jurisdiction* must be apparent.

The same doctrine is fairly to be implied from *Otto* v. *Selwin,* 2 *Lev.* 131.

In *Rose* v. *Himely,* 4 *Cranch* 241. a decree of admiralty was considered a nullity for want of jurisdiction in the court, and especially, because the property had not been *legally seized.* The enquiry regarded part of the cargo of the schooner *Sarah.* After having traded with the *brigands* at *St. Domingo,* and proceeded *ten leagues* from the coast, the *Sarah* was arrested by a *French* privateer, and carried into the *Spanish* port of *Barracoa* in the island of *Cuba.* She was afterwards condemned at *St. Domingo.* The decree of admiralty was opposed on three grounds. 1. Because she was seized more than *two leagues* from *St. Domingo,* which was supposed to be the utmost limit of seizure. 2. Because she was not brought into a port of *St. Domingo.* 3. Because there existed a right to enquire into the legal exercise of jurisdiction, and if the court had transcended its powers, *to adjudge the decree coram non judice and void.*

On all these grounds of objection the supreme court deci-

ded against the decree. *Marshall,* C. J. (p. 268.) on the right of enquiry to ascertain the jurisdiction of the court, thus expresses himself : " This is a claim for a cargo of coffee, &c. which after being shipped from a port in *St. Domingo,* in possession of the *brigands,* was captured by a *French* privateer, and carried into *Barracoa,* a small port in the island of *Cuba,* where it was sold by the captor. The cargo having been brought by the purchaser into the state of *South Carolina,* was libelled in the court of admiralty, by the original *American* owner. The purchaser defends his title by a sentence of condemnation pronounced by a tribunal sitting in *St. Domingo,* after the property had been libelled in the court of this country ; and by an order of sale made by a person styling himself delegate of the *French* government of *St. Domingo* at *St. Jago de Cuba.* The great question to be decided is,

" *Was this sentence pronounced by a court of competent jurisdiction ?*

" At the threshold of this interesting enquiry, a difficulty presents itself, which is of no inconsiderable magnitude. It is this,

" *Can this court examine the jurisdiction of a foreign tribunal ?*

" The court pronouncing the sentence, of necessity decided in favour of its jurisdiction ; and if the decision was erroneous, that error, it is said, ought to be corrected by the superior tribunals of its own country, not by those of a foreign country. This proposition certainly cannot be admitted in its full extent. A sentence professing on its face to be the sentence of a judicial tribunal, if rendered by a self-constituted body, or by a body not empowered by its government to take cognizance of the subject it had decided, could have no legal effect whatever. The power of the court then is, of necessity, examinable to a certain extent by that tribunal which is compelled to decide whether its sentence has changed the right of property. The power under which it acts must be looked into ; and its authority to decide questions, which it professes to decide, must be considered.

" But although the general power by which a court takes jurisdiction of causes must be inspected, in order to determine whether it may rightfully do what it professes to do, it is still a question of serious difficulty, whether the *situation*

*Hartford,*
*June, 1816.*

Slocum
*v.*
Wheeler.

*of the particular thing on which the sentence has passed,* may be enquired into for the purpose of deciding whether that thing was in a state which subjected it to the jurisdiction of the court passing the sentence. For example, in every case of a foreign sentence condemning a vessel as prize of war, the authority of the tribunal to act as a prize court must be examinable. Is the question, whether the vessel condemned *was in a situation to subject her to the jurisdiction of that court,* also examinable? This question, in the opinion of the court, must be answered in the affirmative.

" Upon principle, it would seem, that the operation of every judgment must depend on the power of the court to render that judgment ; or, in other words, on its jurisdiction over the subject matter which it has determined. In some cases, that jurisdiction unquestionably depends as well *on the state of the thing,* as on the constitution *of the court. If by any means whatever a prize court should be induced to condemn, as prize of war, a vessel which was never captured, it could not be contended that this condemnation operated a change of property.* Upon principle, then, it would seem that, to a certain extent, the capacity of the court to act upon the thing condemned, arising from its *being within or without* their jurisdiction, as well as the constitution of the court, may be considered by that tribunal which is to decide on the effect of the sentence.

" Passing from principle to authority, we find, that in the courts of *England,* whose decisions are particularly mentioned, because we are best acquainted with them, and because, as is believed, they give to foreign sentences as full effect as are given to them in any part of the civilized world, the position that the sentence of a foreign court is conclusive with respect to what it professes to decide, is uniformly qualified with the limitation *that it has, in the given case, jurisdiction of the subject matter.*

" This general *dictum* is explained by particular cases." He then states the cases of *The Flad Oyen,* 1 *Rob.* 114. *The Christopher,* 2 *Rob.* 173. *The Kierlighett,* 3 *Rob.* 82. *The Henrick and Maria,* 4 *Rob.* 35. *The Comet,* 5 *Rob.* 255. and *The Helena,* 4 *Rob.* 3. and proceeds : " The manner in which this subject is understood in the courts of *England,* may then be considered as established on uncontrovertible authority. Although no case has been found in which the validity

of a foreign sentence has been denied, because the thing was not within the ports of the captor, yet it is apparent that the courts of that country hold themselves warranted *in examining the jurisdiction of a foreign court*, by which a sentence of condemnation has passed, not only in relation to the constitutional powers of the court, but also *in relation to the situation of the thing on which those powers are exercised ;* at least, so far as the right of the foreign court to take jurisdiction of the thing is regulated by the laws of nations and by treaties. There is no reason to suppose that the tribunals of any other country whatever deny themselves the same power. It is, therefore, at present, considered as the uniform practice of civilized nations, and is adopted by this court as the true principle which ought to govern in this case."

In conformity with the above principles, the court decided again in *Hudson* v. *Guestier,* 4 *Cranch* 294. that " When a seizure is thus made for the violation of a municipal law, the mode of proceeding must be exclusively regulated by the sovereign power of the country, and no foreign court is at liberty to question the correctness of what is done, *unless the court passing the sentence loses its jurisdiction* by some circumstance which the law of nations can notice. *Recapture, escape,* or a *voluntary discharge of the captured vessel* would be such a circumstance, because the sovereign would be thereby deprived of the possession of the thing, and of his power over it. While this possession remains, the *res* may be either restored or sold, the sentence of the court can be executed, and therefore this possession seems to be the essential fact on which the jurisdiction of the court depends."

The determination in *Rose* v. *Himely,* so directly maintaining the right of enquiry into the exercise of admiralty jurisdiction, to ascertain whether the *subject matter* to be affected by the decree, *was within their cognizance,* has been pointedly opposed. It is said to have been overruled in *Hudson* v. *Guestier,* 6 *Cranch* 284. It is undoubtedly true, that *the case was overruled ;* but the general principle abovementioned contained in the opinion of the court as recited, has never been questioned. In the case last quoted it was decided, that *the property might be seized upon the high seas* and *condemned while lying in a neutral port.* But, not a hint is to be found from any quarter, (Judge

*Hartford,*
*June, 1816.*

Slocum
*v.*
Wheeler.

*Johnson* excepted, who was in the negative from the beginning,) discrediting *the general principle, that there existed a right to enquire into the competency of the court's jurisdiction.*

Besides, since the determination in 6th *Cranch,* in the case of *Cheriot* v. *Foussat,* 3 *Binney* 250. the same doctrine that is maintained in *Rose* v. *Himely* is recognized. " The general principle," says *Tilghman,* C. J. " is, that what has been decided by a *court of competent jurisdiction* in one nation, shall not be questioned in the court of another. This would seem to leave the question of competency open. And there is strong reason why that question should be open ; for otherwise we should *be subject to the greatest abuse.* But, even where the authority of the court has clearly emanated from the sovereign power of the nation, it is going too far to say, *that its jurisdiction cannot be questioned.* I conclude, therefore, that we may enquire into the jurisdiction."

Lastly, If the want of jurisdiction appears from the *facts found,* (or which are of record) the decree is an entire *nullity.* I shall not waste time in proving this assertion. If either proposition before advanced is supported, it follows by necessary consequence.

This is the only principle it was indispensable to establish ; and the point has been explicitly determined in *Wooster* v. *Parsons, Kirby* 110. " If" (say the court) " it had appeared *on the face of the process* that the cause of action did arise *out* of the jurisdiction of the city court, all the proceedings would have been *coram non judice* and void, and could have been no justification or excuse for any thing done under them ; nor would any neglect to plead, or any concession of the parties, make it good." The *seizure of the goods on Nashawinna by a privateer's crew appears from the decree,* and renders it utterly nugatory.

In the application of the principles established to the case under discussion, I shall be very brief.

The district court, as *a court of admiralty,* has no jurisdiction of property taken *on our own territory ;* but the property, as the record exhibited verifies, was thus taken ; therefore, the proceedings before the court were *coram non judice* and void.

The district court, *as a court of admiralty,* has no jurisdiction of property taken on our own soil by *privateersmen ;* for such caption cannot be *as prize,* but is *plunder* and trespass. But the property, as the record verifies, was thus

taken by privateersmen; therefore the proceedings before the court were *coram non judice* and void.

The district court of *Connecticut* has no jurisdiction of property *seized* in the district of *Massachusetts*; but the property, as the record verifies, was thus seized; therefore, the proceedings before the court were *coram non judice* and void.

It necessarily results, that the charge to the jury instructing them, that the decree of the district court proved nothing for the defendants, was entirely legal.

EDMOND and GOULD, Js. not having heard the arguments of counsel, gave no opinion.

New trial not to be granted.