### WATSON *against* WATSON and another.

In this state, a writ of replevin is sustainable only in cases of attachment and distress.

In replevin, it is not essential to the *regularity* of the process, that the bond required by statute, should appear at length on the face of the writ; or that

it should disclose the fact, that the property to be replevied had been impounded or distrained ; or that it belongs to the plaintiff.

It is the duty of an officer, in which he will be protected, to obey, without investigating the cause of action, every precept put into his hands for service, which appears, on its face, to have issued from competent authority and with legal regularity. Consequently, his knowledge of facts evincing the existence or want of a cause of action, does not affect his duty or liability.

Trespass will not lie for a malicious wrong, effected, through the medium of legal process, by a party to that process; the proper remedy being an action on the case.

*Hartford,*
*June, 1832.*

Watson
*v.*
Watson.

THIS was an action of trespass against *John B. Watson* and *Samuel Phelps,* for taking and carrying away from the plaintiff a certain grey horse, alleged to be of the value of 900 dollars.

The cause was tried at *Hartford, September* term 1831, before *Daggett,* J.

The plaintiff proved property in the horse, and that the defendants took him forcibly out of the plaintiff's possession. The defendants attempted to justify the taking, by showing to the court a certain writ of replevin, issued by *John M. Niles* Esq., a justice of the peace, by virtue of which *Phelps,* as a constable, and *Watson,* as a party, took the horse. The writ of replevin was as follows : " To the sheriff, &c. By authority of the state of *Connecticut,* you are hereby commanded, justly and without delay, to cause to be replevied to *John B. Watson* of *Hartford,* his beasts or horses, *viz.* one sorrel *Arabian* mare and one three years old grey *Arabian* horse, now detained or impounded by *John Watson, Ralph Watson* and *Edward H. Watson,* all of *East-Windsor,* and by them unjustly detained ; as it is said. And you are to summon the said *John Watson, Ralph Watson* and *Edward Watson* to appear before *John M. Niles* Esq., a justice of the peace for *Hartford* county, at his office, on the 27th of *February* 1830, then and there to answer unto the said *John B. Watson,* in a plea wherein the plaintiff complains and says, that the defendants, on the 1st of *February* 1830, at said *East-Windsor,* in a certain place called the home-lot of the defendants, occupied by them, took the said beasts, that is to say, the mare and horse aforesaid, and them unjustly *impounded,* confined and detained as aforesaid, until this time." There were three other counts, alleging a taking and detention only, on different days and at different places from those specified in the first count. At the conclusion of the writ was an entry in these words : " The said *John B. Watson* has given bond according to law." The writ was

*Hartford,*
*June, 1832.*

Watson
*v.*
Watson.

dated at *Hartford,* the 9th day of *February* 1830 ; and signed " *John M. Niles,* justice of the peace." This writ was duly served and returned, by the defendant *Phelps,* to justice *Niles,* with his doings endorsed thereon according to law. The defendants also produced a recognizance, entered into, by *John B. Watson* and *Charles M. Emerson,* before justice *Niles,* when the writ was granted, in the sum of 300 dollars, the condition of which was, that *J. B. Watson* should prosecute his writ of replevin to full effect, and in case he should not make his plea good, satisfy such demands and dues as the defendants in replevin should recover against him in that suit.

The plaintiff proved that the horse in question was not distrained, impounded, attached, or in any other way in the custody of the law, but was in the actual possession of the plaintiff ; and that these facts were well known to both the defendants, at the time the writ of replevin was taken out and served.

The judge decided, that such writ was not a justification to either of the defendants ; and the jury returned a verdict against them.

The defendants moved for a new trial, on the ground of error in such decision.

*Hungerford* and *Toucey,* in support of the motion, contended, 1. That replevin may be sustained, although the property replevied was not in the custody of the law. *Shannon* v. *Shannon,* 1 *Scho. & Lef.* 324. 1 *Esp. Dig. part* 2. *p.* 217. (*Gould's ed.*) *Pangburn* v. *Patridge,* 7 *Johns. Rep.* 140. *Thompson* v. *Button,* 14 *Johns. Rep.* 84. 87. *Shearick* v. *Huber,* 6 *Binn.* 2.

2. That the process being regular upon the face of it, the officer was bound to obey the mandate. He was commanded to deliver *the specific property* to the plaintiff in replevin. He would not go out of the mandate to enquire, whether there had been a tortious taking, or whether the property was in the custody of the law. If he had made such enquiry, and obtained the information sought, he could not act upon it.

3. That *trespass* will not lie, but *case* is the proper remedy, for an injury effected by regular process, issued by and returnable to a magistrate or court of competent jurisdiction. Such process, from whatever motive procured, is a complete defence to an action of trespass. *Luddington* v. *Peck,* 2 *Conn. Rep.* 700. 1 *Chitt. Plead.* 138.

*N. Smith*, contra, insisted, 1. That the remedy by replevin, in this state, proceeds solely upon the ground of enabling a man to repossess himself of his own goods, which have been taken from him by distress or attachment. Our law is different from the *English* law, and much more simple. Here the property to be replevied must be in the custody of the law ; otherwise, the process is not sustainable. 2 *Swift's Syst.* 89· 92, 3. 1 *Swift's Dig.* 523.

2. That the process, in this case, was *irregular ;* first, because no bond *accompanied* the writ of replevin. The certificate of the justice, that a bond was given according to law, was unauthorized and void. The bond must go with the writ, that the officer may see that his process is regular, and the defendant may know what comes in place of the property replevied. Secondly, the bond taken by the justice, was not according to the statute, and was therefore void. The statute requires a bond " conditioned that the plaintiff shall prosecute his action to effect and pay all *damages and costs* the adverse party may recover against him." *Stat.* 382. The bond given in this case was conditioned that the plaintiff should prosecute &c. and on failure, " satisfy such *demands and dues* as the defendants should recover against him."

3· That for the injury complained of, *trespass* is the proper remedy ; it being universally true, that where goods have been taken *wrongfully*, the owner may sustain this action.

Hosmer, Ch. J.   To simplify the case as much as possible, I will first put out of consideration, the three last counts in the writ of replevin. These are founded, not on an impounding or distress, but on a caption and detention only. In *Westminster-Hall*, and in some of the contiguous states, an action of replevin lies for any tortious or unlawful taking of goods and chattels, and is not alone restricted to cases of distress. 2 *Phill. Evid. et in notis.* But in this state, no action of replevin has ever been sustained on this ground. A negative usage of this kind, so far as our legal muniments reach, and beyond the memory of man, is decisive to show, that no such suit is sustainable. 2 *Swift's Syst.* 89· 1 *Swift's Dig.* 523. Numerous must have been the instances, in which an action of this description would have been brought, were it not for the universal conviction, that it could not be maintained. The inference from the usage just mentioned receives strong confir-

*Hartford,*
June 1832.

Watson
*v.*
Watson.

mation from the acts authorising writs of replevin.    *Stat.* 382.
Express authority is there given for the replevying of cattle
and other goods and chattels, *when impounded and distrained ;*
and the form of process, and the bond to be taken upon it, are
particularly prescribed ; but here the law has stopped.    *Stat.*
244. 382.    By fair implication, this denotes, that a replevin is
not allowable in any other case.    Had it been authorised, the
legislature, according to the genius of our laws, would have
directed, what bond should be taken, and in what manner ; a
proceeding beyond the competency of any judge or justice to
settle, in this new and unprecedented action.

The first count in the writ of replevin is founded on an im-
pounding and distress of the horse before-mentioned, and pre-
sents the only material controversy in the case.

The objections made to the defendants' plea, embrace these
positions ; that the process of replevin was void, by reason of
its having been irregularly issued ; and that *Phelps,* the offi-
cer, knowing that the horse before-mentioned was not distrain-
ed or impounded, a fact likewise known to *John B. Watson,*
the plaintiff in the replevin, ought not to have obeyed the com-
mand of the writ.    These objections I will meet, by several
distinct propositions.

1.  My first proposition is, that justice *Niles* had right to is-
sue the writ in question.    The persons, process and subject
matter were clearly within his cognisance, by the explicit en-
actment of the statute authorising writs of replevin.    *Stat.*
382. *s.* 1, 3.    Vid. *Marshalsea* case, 10 *Co.* 76.    *Grumon* v.
*Raymond,* 1 *Conn. Rep.* 40.    *Slocum* v. *Wheeler* & al. 1 *Conn.
Rep.* 429.

2.  The writ of replevin was regularly issued.    It is literally
in the language prescribed by the statute ; and bond with
surety was taken in the words of the law.    *Stat.* 244, 5.    As
several specific objections were made, by the plaintiff's coun-
sel, to this point, it will conduce to perspecuity to consider
them distinctly.

It was said, that the bond taken ought to be certified partic-
ularly and fully, on the writ in question.

I do not admit the position advanced.    The law only re-
quires, that bond with sufficient surety shall be taken.    *Stat.*
382.    I grant, however, that the fact should appear on the
process, that a legal bond was given ; and it does appear, in
the precise manner, which the legislature, in their prescribed

form, have required. The justice certified on the face of the writ, that " the said *John B. Watson*, has given bond according to law," and thus literally complied with the statute provision on this subject, as well as with the uniform practice in such cases. This is all that the ancient practice required in any case, the justice expressing the bond at full length in a private book kept for that purpose ; although in modern times, it has been customary to enter on the writ the amount of the bond taken, and the names of the persons giving it. This furnishes, at all times, a memorandum, which may be expounded and put into legal form, whenever it shall become necessary. [This fact I state on my own responsibility, and not from authority imparted by the court.]

It was next objected, that the justice had no legal right, to issue a replevin, until it is made to appear, that property was impounded or distrained.

If by this assertion, it was intended, that the justice is bound to enquire on this subject, and to ascertain the fact, it undoubtedly is erroneous. No preliminary enquiry or investigation is demanded. The form of replevin prescribed by the legislature, demonstrates the duty of the justice. It commands that the goods be replevied, which are impounded or distrained " *as it is said*," thereby evincing, that the writ of replevin is demandable *of right*, on the complaint and request of the party claiming to be injured. Such, as is well known, is the invariable practice.

If, however, the objection meant only to question the sufficiency of the averments in the writ of replevin, and to demand that they should be more precise and particular, it is a conclusive reply, that they have all the precision and particularity, which the form prescribed by the legislature requires.

It has been further objected, that the horse in question was irrepleviable, as it appears that he belonged to *Ralph Watson*, and not to the plaintiff in replevin.

I ask when and to whom did this appear ? The only answer necessarily is, it appeared at the trial of the case, *many months after the replevin was issued.* The irrelevancy of the objection to the irregularity of the process, is too apparent to require discussion.

That the replevin was duly and regularly issued, I think, there exists no reasonable doubt.

The next enquiry regards the conduct of *Phelps*, the de-

fendant.   The writ was put into his hands, as an officer, to serve ; and he accordingly served the same, by replevying the before mentioned horse.   The first objection to this act of his, is founded on a fact, proved at the trial of the cause, to wit, that he knew the said horse had not been distrained or impounded.    From this the plaintiff infers, that he ought not to have served the replevin ; and that in thus doing, he became a trespasser.   I reply to this objection, that the defendant, *Phelps*, being a legal officer, it became his duty, regardless of any knowledge, or supposed knowledge, of his own, that there existed no cause of action, to serve the writ committed to him, promptly, unhesitatingly, and without restraint from the above mentioned cause.   This I consider so firmly established, as to render the proposition self-evident.   The facts on the face of the writ, constitute his justification ; because he was obliged to obey its mandate ;   nor was it any part of his duty to determine, whether the allegations contained in the replevin were true.   The proof of these positions results, incontrovertibly, from his relative condition.   He was an executive officer, whose sole duty it is to execute, and not to decide on the truth, or sufficiency, of the processes committed to him for service. He has no portion of judicial authority, nor the means of enquiry into the causes of action, contained in the writs and declarations put into his hands for service.   Obedience to all precepts committed to him, to be served, is the first, second, and third part of his duty ; and hence, if they issue from competent authority and with legal regularity, and so appear on their face, he is justified for every action of his within the scope of their command.   "It is incomprehensible," said Lord Kenyon, in *Belk* v. *Broadbent* & ux. 3 *Term Rep.* 183. 185. " to say, that a person shall be considered a trespasser who acts under the process of the court."   In *Grumon* v. *Raymond & al.* 1 *Conn. Rep.* 40. it is said, by Ch. J. *Reeve*, that where it does not appear on the face of the warrant, that it is illegal, it is the officer's duty to obey.   *Milles* v. *Davies & al. Cowp. Rep.* 590. The ground of these principles is simply this ; that to the magistrate is confided the issuing of writs, and to the sheriff, and other executive officers, is confided the duty of serving them. It is easy to see what wide-spread mischief might result, from permitting an executive officer to decide, on his own knowledge, that he ought not to serve a precept or warrant put into his hands for service : and to consider what penalty must follow

*Hartford,*
June 1832.

Watson
*v.*
Watson.

from such doctrine, that is, that his return of the fact would be a justification for his omission. In short, the executive officer must do his duty, which is to obey all legal writs; and must not arrogate to himself the right of disobeying the paramount commands of those, to whose mandates he by law is subjected.

It was said, in the argument of this case, that no difference exists, as to the proceedings of an officer, if the plaintiff has no property in the goods to be replevied, between the taking of property on a replevin, and the taking of the goods of *A.*, upon a process commanding him to take the goods of *B.*; that is, that the caption in both cases is equally a trespass. No remark can be more unfounded, for the difference is immense and distinctly marked. *In the case of the replevin, the officer does what by legal authority he is commanded to do; and in the other case, he does what he was not commanded to do.* In replevin, the property is identified and described, and the command is, *Take this specific property.* In the case of a process commanding the taking of the goods of *A.*, without any identification or description, the command is, *Take the goods of A., if any such there are, but not the goods of any other person.* From the nature of the case last put, the officer must act on his own enquiry, and is bound to all the responsibility of his action. Unless he acts in this manner, he cannot act at all.

It is found to be a fact, that the horse in question was not distrained or impounded; and that it was known to the defendant *Phelps.* I have already shown, that this can make no difference in the case. The officer was bound to replevy the horse, by the imperative command of a magistrate; and whatever was his knowledge on the subject, he could never return this as a justification, for his neglect to obey the mandate of the writ. It would be extraordinary to hold, that the officer must serve the replevin, or be responsible to the plaintiff in that instrument; and if he does serve *it*, that he is answerable in damages to the defendant. No legal officer is placed in this predicament;—a predicament in which the argument in this case, if admitted, would place him.

The counsel for the plaintiff have agreed, that the defendant, *Phelps, found* the horse not distrained and at large in the plaintiff's home lot; and that, for this reason, he ought not to have executed his writ. This, in another shape, is one effort to set up the knowledge of the officer, against the command of

*Hartford,*
June, 1832.

Watson
*v.*
Watson.

his precept, and already has received an answer. In another view of the subject, the observation is without force. The place in which the horse was found, was not incompatible with his having been distrained.

On the whole, I have no doubt, that it was the duty of the defendant *Phelps* to obey the mandate of justice *Niles,* and to replevy the horse ; and that the facts appearing in the case constitute a full justification in his favour, against the plaintiff's action.

The question still remains, is the defendant, *John B. Watson,* justified, by the defence he has set up ? The horse, it is found, was not his property ; and he knew, likewise, that it had not been distrained or impounded. In other words, he knew, that he had no cause of action, and no right to replevy. It follows, as an undoubted consequence, that he has perpetrated a malicious wrong, through the medium of legal process. That this is an injury done to the plaintiff is unquestionable ; but the enquiry is, does it in law constitute a trespass ? Most clearly it does not. *Chitty,* in his treatise on *Pleading,* truly states, (*p.* 187.) that whenever an injury to a person is effected, by regular process of a court of competent jurisdiction, though maliciously adopted, *case* is the proper remedy, and *trespass* is not sustainable ; as for example, for a malicious arrest, or a malicious prosecution. Again, he says, (*p.* 188.) no person who acts upon a regular writ or warrant, can be liable to the action of trespass, however malicious his conduct, but case for the malicious motive and proceeding, is the only form of action. These principles are supported by numerous cases. *Belk* v. *Broadbent* & ux. 3 *Term Rep.* 185. *Root* v. *Cooper* & al. 1 *Term Rep.* 535. cited. S. C. reported 3 *Esp. Rep.* 135. *Ratcliffe* v. *Burton,* 3 *Bos. & Pull.* 223. *Stonehouse* v. *Elliott,* 6 *Term Rep.* 315. 3 *Stark. Ev.* 1446. and cases cited *ibid.* The same point was determined, in a similar manner, by this Court, in *Luddington* v. *Peck,* 2 *Conn. Rep.* 700. It results, that the defence pleaded is, *in this action,* equally available to *Watson* as to *Phelps.*

The charge of the Judge, for the aforesaid reasons, was incorrect ; and a new trial must be advised.

PETERS, WILLIAMS and BISSELL, Js. were of the same opinion.

DAGGETT, J.  In this case, I do not concur with the Court, but adhere to the opinion given in charge to the jury at the circuit.

I lay out of consideration the doctrine of the common law as to the action of replevin, because our statute has provided for it ; and it must therefore be subject to the statutory regulations.    This is laid down in 1 *Swift's Dig.* 523., and is recognised by this Court.    Indeed, if the common law were to govern, in this case, it is not within its principles ; for there is no pretence that the property in question was ever tortiously taken out of the possession of the plaintiff in replevin.    This is an essential fact, upon the best authorities, to support the action at common law.

By our law, replevin lies to regain the possession of cattle or beasts which have been impounded, or personal estate which has been attached ; and in those cases only.    In the present case, it is not pretended, that the beasts taken by this writ had been attached.    It is not so alledged.    The plaintiff in replevin simply alledges, that they were his beasts or horses impounded or distrained.    The court below found as facts, that this horse was the property of *Ralph Watson ;*—that it was forcibly taken out of his possession ; and was not, in any way, either by distress, impounding, or attachment, in the custody of law, but was then in the actual possession of the plaintiff, *Ralph Watson ;* and that these facts were well known to the defendants.    Under these circumstances, the judge at the circuit charged the jury, that the writ of replevin and proceedings under it, formed no defence either to *John B. Watson,* the plaintiff in replevin, or to *Phelps,* the officer who executed the process.    This Court now decide, that the charge was incorrect ; but I must be permitted, with all due respect, to dissent.

Here, the proposition advanced is, that this process of replevin was, upon the face of it, legal ; and that this justifies the officer who has served it.    It is said, that an officer can always justify his proceedings under a process legal upon the face of it ; and that for any abuse of any such process, *case,* and not trespass, is the proper remedy.    This general proposition I am not disposed to deny ; but let us enquire whether it applies to this case.    The precept commands the constable to cause the beasts of *John B. Watson,* impounded or distrained, to be replevied ; and the case finds, that the horse for which this action is brought, was not impounded or distrained, and that both the

*Hartford,*
*June 1832.*

Watson
*v.*
Watson.

defendants knew it.   They both then knew, that this horse was not repleviable ; and of course, they knew, that if this process was served upon this horse, it would be a misapplication of it.   They knew then, that this horse was not the horse pointed out in the process ;—that it was the horse of *Ralph Watson*, and in his actual possession, and not in custody of law.   Then, in my judgement, they are both liable in trespass. It is familiar law, that if the sheriff, by mistake, levy an execution against *A.* on the body of *B.*, or on his goods, it is a misapplication of the process, and he is liable to *B.*, in trespass. *Sanderson* v. *Baker* & al. 2 *W. Bla. Rep.* 832.   2 *Selw. N. P.* 916.   *A fortiori*, he is liable, if he knows that neither the body nor goods of *B.*, thus taken, were liable.   Now, I am wholly unable to distinguish that case, in principle, from this.   The officer here is directed to replevy a horse belonging to *John B. Watson*, impounded or distrained.   In obedience to this process, he seizes the horse of *Ralph Watson* not impounded or distrained.   Is not this process wholly misapplied ?

So, if an attachment or execution should issue against the body of an executor or administrator, who by law cannot be arrested, for a debt due from him in that character ; and the officer should arrest the body, though the precept gave express authority, would he not be a trespasser ? The officer in that case cannot alledge, that he was ignorant of the law.   The cases of *Cameron* v. *Lightfoot*, 2 *Bla. Rep.* 1190. and *Tarleton* v. *Fisher* & al. *Doug.* 671. are cited in support of the principle adopted by the Court.   In these cases, trespass was brought for arresting the bodies of persons protected from arrest, by special exemptions.   Of the same nature was the action of *Swift* v. *Chamberlain*, 3 *Conn. Rep.* 537.   It was decided, in all these instances, that the remedy was by application to the proper tribunal for discharge from the arrest ;—that the process was legal ; that the exemption was a privilege, of which the party might avail himself or not ; and that no action would lie, except for the abuse of the process.   These authorities do not establish any doctrine applicable to this case.   Here the officer knew that the property was not repleviable.

Again : Proceedings in replevin like this, would expose every man's property, in the community, to the rapacity of every unprincipled bankrupt.   A horse of great value is forcibly taken from the owner's possession, by a writ of replevin, returnable before a single minister of the law, and seven dollars dam-

ages demanded. On this writ, no bond with surety is given, as is directed, in case of attachment that shall extend to the value of the property, but a bond that the plaintiff will answer all damages, in case he make not his plea good—a bond applicable only to a case of property impounded, and not having any other or greater operation.

I will not say, that this process is void on the face of it ; but it is so near it, that it is entitled to no indulgence : and as it was executed on property not repleviable, and that known to the officer, and of course known to the plaintiff in replevin, I think it is misapplied, and should afford no protection to either.

The motion, therefore, ought, in my opinion, to be denied.

New trial to be granted.