## RUSHWORTH *v.* MOORE.

By the Revised Statutes, the protest of any bill of exchange, note or order, foreign or domestic, whether made by a notary resident in this State or elsewhere, is made competent *primâ facie* evidence of all the facts stated in it, including the notice given to the drawer or maker, and indorsers.

A statement by the notary that he *duly* notified the indorsers, does not vitiate or render the protest inadmissible as evidence of notice to them.

Assumpsit for money paid is a proper form of action by a subsequent indorsee, who has paid a bill or note, whereby to recover the amount paid, of a prior indorser.

Rushworth *v.* Moore.

After demand of payment, refusal and notice to all parties, the payment of a bill or note, by a subsequent indorser, is in law a payment to the use of each preceding indorser, in the order of their respective indorsements ; and everything having been done necessary to enable him to maintain an action, the law will imply the same liability as exists by the contract of indorsement.

In indorsing a note, each indorser engages to pay the contents thereof himself, if the same be not paid by the maker, on demand, at maturity, and impliedly requests each subsequent indorser, if he should fail to do so, to pay it for him and to his use, and promises that, if any of them shall pay it, he will repay him the money thus advanced to his use. When, therefore, a subsequent indorser is compelled to pay a note, he is compelled to pay money which each prior indorsee had promised and was legally liable to pay, and, under these circumstances, the law implies a request to him, by such prior indorser, to pay the money to his use.

ASSUMPSIT, for money paid, laid out and expended. The plaintiff gave in evidence a promissory note, made by one Joshua West, for the sum of $575.00, dated Philadelphia, December 21, 1852, payable to the defendant, or order, four months after date, and by the defendant first indorsed, and subsequently indorsed by the plaintiff and others: He also put in evidence a protest under the hand and notarial seal of *Peter Craus*, notary public, dated Philadelphia, April 23, 1853, setting forth that on . that day, at said Philadelphia, at the request of the Farmers' and Mechanics' bank, the holders of the original promissory note, a copy whereof was annexed, during the usual hours of business, he had presented said note at the place of business of the maker, and demanded payment thereof, which was not obtained, &c., whereupon he had protested said note for want of payment thereof, and duly notified the indorsers. The signature of the defendant upon the back of the note was admitted, and also that the 23d day of April, 1853, was Saturday.

Thereupon a verdict was taken, by consent, for the plaintiff; judgment to be rendered thereon, or the same to be set aside and a new trial granted, as this court might order.

*Albert R. Hatch*, for the defendant.

*William H. Y. Hackett*, for the plaintiff.

FOWLER, J. By a provision of the Revised Statutes of this State, the protest of any bill of exchange, note, or order, duly certified by any notary public, under his hand and official seal, is made competent evidence of the facts stated in such protest, and of the notice given to the drawer or indorsers. Rev. Stat., chap. 14, sec. 3 ; Comp. Laws 70 ; *Williams* v. *Putnam*, 14 N. H. 543.

The language of the statute is general, and alike applicable to foreign and domestic bills and notes, and to the protests of notaries resident in other States as well as our own. The evident intention of the Legislature in its enactment would seem to have been to obviate the difficulties and inconveniences to which the collection of notes and domestic bills was subject at common law, under the decisions of the courts ; and we are of opinion that, by the provisions of the statute, the protest of any bill of exchange, note or order, foreign or domestic, whether made and certified by a notary resident in this State or elsewhere, is competent *primâ facie* evidence of all the facts stated in it, including notice to the drawer or maker, and the indorsers.

There is no doubt that in order to recover, on a count for money paid, against a prior indorser, the plaintiff was bound to offer competent *primâ facie* evidence to prove the prior indorsement by the defendant, the subsequent indorsement by himself, demand upon the maker, and non-payment by him, notice to the indorsers, and subsequent payment by himself. The possession and production of the note, an inspection of the indorsements thereon, with the admission of the defendant's signature, and the protest of the notary, seem to have furnished such *primâ facie* evidence. The possession of the note by the plaintiff, shown by inspection to have been a subsequent indorsee to the defendant, in connection with the fact stated in the protest, that, at maturity, the note was holden by the Farmers' and Mechanics' Bank, is competent *primâ facie* evidence that it had been paid by the plaintiff to the holders at protest, or to some subsequent indorser. The defendant's indorsement was admitted, the subsequent indorsement of the plaintiff was apparent from the note itself, and

the protest proved demand on the maker at maturity, and non-payment by him, and notice to all the indorsers.

No objection has been taken in the argument to the statement of demand and non-payment, as set forth in the protest, but it has been argued that the protest is defective and insufficient as evidence of notice to the indorsers, inasmuch as it states a conclusion of law where it should recite facts in detail. The notary certifies that he *duly* notified the indorsers ; whereas, it has been contended that he should have set forth how, when and where the notices were given. We do not understand that such is the usual course in notarial protests, or that the statute requires any such recital to make the protest *primâ facie* evidence of notice to indorsers. Indeed, it would seem quite doubtful, from the language of the statute, whether it contemplated any recital in the protest of the fact that notice had been given to the indorsers, in order to make it *primâ facie* evidence of such notice. The language is, " the protest of any bill of exchange, note or order, duly certified," &c., " shall be *evidence of the facts stated in such protest, and of the notice given to the drawer or indorsers.*" It is quite certain that, under the ordinary practice in England and this country, it was not necessary or usual that the notice should be given by the notary, or be certified in the protest. Chitty on Bills 497 ; Edwards on Bills and Notes 461. It is not, however, necessary to decide this point. Admitting the custom of the holders of bills or notes to make the notary an agent, for the purpose of giving notice to the indorsers, to have become so general that the statute contemplated that the protest should not only recite the facts legitimately within the scope of such an instrument, but should also contain a recital of the fact of notice to the indorsers, we think the statement in the protest now under consideration is sufficient.

It has been asserted, in the argument for the plaintiff, and not controverted, that at the date and maturity of the note in suit all the parties thereto were residents of Philadelphia. The well settled general rule in such cases is, that notice of the dishonor must be served personally on the indorsers, by delivery thereof

to them severally, or leaving the same at their respective dwelling houses or places of business. *Manchester Bank* v. *Fellows,* 8 Foster (28 N. H.) 310; *Green* v. *Darling,* 3 Shep. 141; *Bowling* v. *Harrison,* 6 How. U. S. 248; *Smedes* v. *Utica Bank,* 20 Johns. 372; *Shepherd* v. *Hall,* 1 Conn. 429; Story on Promissory Notes, secs. 322, 323, and authorities; Edwards on Bills and Notes 601, and authorities. Now it seems to us the fair and natural presumption would be, and, so far as our inquiries have extended, such appears to be the general custom of notaries, that, if the notary gave personal notice, he would simply certify the fact that he gave notice; but if the residences of the indorsers were unknown, or at a distance, or if, from any other cause, personal notice were not given, the notarial certificate would recite what was done to give notice, so as to enable the court to judge of its sufficiency. Where, as in the present case, the notary certifies that he gave notice to the indorsers, the notice must be understood, *primâ facie,* to have been personal and actually given, and the notary is officially responsible for the correctness of his certificate.

Neither does the insertion of the word *duly* vitiate the notary's certificate, nor is it on that account to be regarded as stating a conclusion of law instead of a matter of fact. Duly may well be interpreted properly, and the certificate be understood as a simple averment by the notary that he had properly, in the usual and ordinary mode of giving personal notice, notified the indorsers. All that need have been stated was that notice had been given to the indorsers; all else is surplusage, and might well be rejected as such. The fact that notice was given is none the less stated because it is averred to have been given properly, in the usual and customary mode; which we must regard as equivalent to saying, under the circumstances of the case, that it had been done by delivering to or leaving at the place of business or residence of each indorser a written or printed notice of the protest. The statute making the protest itself *primâ facie* evidence of the notice, as well as of the other facts stated in it, we can

discover nothing in the form of the present protest to exclude it from the operation of the statute rule.

Nor have we any doubt that assumpsit for money paid is a proper form of action by a subsequent indorser, who has paid a bill or note after protest, to recover the amount paid of a previous indorser. Every indorser of a promissory note, by his indorsement contracts with the indorsee and every subsequent holder, among other things, that if, when duly presented at maturity, it shall not be paid by the maker, he will, upon due and reasonable notice given him of the dishonor, pay the same to the indorsee or other holder, and, if the note shall have been again transferred, that he will indemnify and save the subsequent indorsers harmless therefrom. Story on Prom. Notes, sec. 135, and notes; Story on Bills, secs. 108–111, 119, 127, 225, 262; Chitty on Bills 269, 270; Edwards on Bills and Notes 245–295; Bayley on Bills, chap. 5, sec. 3.

One of the most common cases of assumpsit for money paid is where the plaintiff has been compelled to pay money which the defendant was legally compelled to pay. Thus sureties may recover of their principals, in this form of action, the whole amount paid for them on bills, notes or other contracts, and have contribution against co-sureties. In all such cases the law implies a request by the defendant to the plaintiff to pay the money to his use. Notes to *Lampliegh* v. *Brathwait*, 1 Smith's Leading Cases 70; 2 Greenl. Ev., sec. 114, note.

In indorsing the note in suit the defendant engaged to pay it, if it were not paid on demand by the maker, when due, and impliedly requested each subsequent indorser, if he should fail to do so, to pay it for him and to his use; and promised that if any of them did so he would repay to him the money thus advanced to his use. The plaintiff, the next indorser, when he transferred the note, became liable to pay it; and, having been compelled to do so, may rightfully recover of the defendant in the present action the amount paid, with interest thereon. The plaintiff stood in the relation of surety to the defendant, and having been com-

pelled to pay the debt, is entitled to recover the amount paid, as paid for the use of his principal.

In *Pownal* v. *Ferrand*, 6 B. & C. 439, where the plaintiff, the indorser of a bill of exchange, having been sued by the holder and compelled to pay a part of it, sought to recover the money so paid by him, of the acceptor, in an action for money paid, and it was objected that the action should have been upon the bill, Lord *Tenterden*, C. J., said: "I am of opinion the plaintiff is entitled to recover, upon the general principle that one man, who is compelled to pay money which another is bound by law to pay, is entitled to be reimbursed by the latter; and I think that money paid under such circumstances may be considered as money paid to the use of the person who is bound to pay it." *Bayley*, J., in the same case, says: "If I pay your debt, because I am forced to do so, then I may recover the same, for the law raises a promise on the part of the person whose debt I pay, to reimburse me." *Exall* v. *Partridge*, 8 D. & E. 308.

In *Grissell* v. *Robinson*, 3 Bingham's N. C. 10, Chief Justice *Tindal* says: "I have always understood the distinction, as to the obligation to sue on the special contract rather than on the general count, to be, that where, at the time of the payment, any thing remains to be done under the contract, of which the plaintiff must show performance, the action should be on the special contract; but where all has been done, and the plaintiff has only to prove the payment of the money, then he may sue on the general count; and in order to recover on that count he must show an express or implied assent of the defendant to the payment of the money, or that it was paid upon compulsion for the use of the defendant."

In the present case every thing had been done, before the plaintiff was compelled by the defendant's neglect to pay the amount of the note indorsed to him by the defendant, to render the defendant ultimately liable for the payment of that note, and therefore the money paid by the plaintiff may well be regarded as paid for the defendant's use, and recoverable under the general count. When demand had been made upon the

maker, and payment refused, and notice thereof given to all the indorsers, the liability of the several parties was fixed. Each of the several indorsers was liable to pay the note to the holder, and the several prior indorsers were liable to reimburse the several subsequent indorsers whatever sum might be paid by them. The payment of the note by a subsequent indorser was in law a payment to the use of each preceding indorser, in the order of their respective indorsements; and when the plaintiff paid the note his right of action was complete, and he could thereupon recover of the defendant, a prior indorser, the amount so paid, either in a special action upon the note, or in general assumpsit for money paid to his use. Every thing, upon the payment by the plaintiff, had been done necessary to enable him to maintain his action, and the law thereupon implied the same liability as existed by the contract of indorsement. *Baker* v. *Carridy*, 16 Barber 178; *Butler* v. *Wright*, 20 Johnson 367; 2 Wendell 513; 6 Wendell 284.

The relation of the present parties is analogous to that of a receiptor for property attached on writs, and the person giving him an express guaranty of indemnity against liability therefor; and it has been held in this State, that where a receiptor, with such express contract, has been compelled to pay the amount of executions issuing in the suits, and the officer's fees, he may recover the amount in assumpsit for money paid; the contract for indemnity containing nothing more than the law would imply: the existence of the contract and the fact of payment being shown. So, in the present case, the indorsements being shown — the demand, non-payment and notice, and payment by the second indorser — the law implies just what the express contract of the first indorser stipulates; and the plaintiff was at liberty to declare either upon the special contract, or in general assumpsit for money paid, at his election; the law under such circumstances regarding the money as paid for the use of the first indorser, at his request. *Sanborn* v. *Emerson*, 12 N. H. 57; *Gibbs* v. *Bryant*, 1 Pick. 118.

It has been settled in this State that assumpsit for money had

and received will lie by a second indorser against the first, on the ground that every transfer of a note implies the receipt of money by the indorser to the amount of the note. *Martin* v. *Farnum*, 4 Foster (24 N. H.) 194, 195; and there seems on principle far less objection to the maintenance of an action for money paid between the same parties.

On the whole, therefore, we are clearly of opinion there is no valid objection to the form of the present action, and as the other objections taken are deemed invalid, there must be

*Judgment upon the verdict.*